UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**WAYNE DOTY**, an individual,

Plaintiff,

CASE NO:

v.

**TOM NEHL TRUCK COMPANY**,
a Florida corporation,

Defendant.
_____/

## COMPLAINT

Plaintiff Wayne Doty ("Doty") sues Defendant Tom Nehl Truck Company ("Defendant") and states as follows:

### NATURE OF CLAIMS

1. Doty asserts claims against Defendant under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*. ("FMLA"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. ("ADEA"), the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA"), the Florida Civil Rights Act, Fla. Stat. § 760.01 *et seq*. ("FCRA"), and the Florida Whistleblower Act, Fla. Stat. § 448.101 *et seq*. ("FWA").

### PARTIES, JURISDICTION, AND VENUE

2. Doty is an individual residing in St. Johns County, Florida.

1

3.  Doty is a former sales employee of Defendant. Doty alleges that, during his employment, Defendant subjected him to both discrimination and retaliation under the statutes identified in Paragraph 1.

4.  Defendant is a Florida corporation with its principal place of business at 417 Edgewood Avenue, Jacksonville, FL 32254.

5.  At all times relevant to the Complaint, Defendant employed more than 50 people within a 75-mile radius of its principal place of business.

6.  Defendant is an "employer" as defined in the statutes identified in Paragraph 1.

7.  Doty is a covered employee or person as defined in the statutes identified in Paragraph 1.

8.  To the extent required, Doty dual filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and Florida Commission on Human Relations ("FCHR") within 180 days of the alleged discriminatory and/or retaliatory acts about which he complains.

9.  All conditions precedent to filing this lawsuit, including administrative prerequisites, have been satisfied.

10.  Specifically, the EEOC has issued a notice of right to sue to Plaintiff under all statutes identified above that require administrative claims before a lawsuit can be filed. *See* Exhibit "A" hereto.

11.  This lawsuit is being filed within ninety (90) days of Plaintiff receiving the right to sue notice.

12. Under 28 U.S.C. § 1331, this Court has original jurisdiction over Doty's claims because they arise under the Constitution, laws, or treaties of the United States.

13. Under 28 U.S.C. § 1391, venue is proper on the grounds that (i) Defendant resides in this judicial district and (ii) a substantial part of the events giving rise to the claims occurred in this judicial district.

14. Under 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Doty's claims under the FWA and FCRA as they are so related to the federal claims that they remain part of the same case or controversy under Article III of the United States Constitution.

### STATEMENT OF FACTS

15. Defendant is in the business of selling, leasing, and servicing commercial trucks. Doty worked for Defendant as a sales representative from February 2017 until September 30, 2021.

16. Doty is 67 years old. He suffers from a degenerative knee condition that required him to have knee replacement surgery in March 2021.

17. Doty's knee condition constitutes a physical impairment that, among other things, substantially limits his ability to walk. Doty's knee was a serious health condition that, among other things, required inpatient hospital care and continuing treatment by a health care provider.

18. Nevertheless, Doty could perform the essential functions of his job and was qualified for his job.

19. During his employment, Doty sold truck parts to customers that included, for example, state and county garages, school districts, and truck repair shops.

20. Throughout his employment, Defendant's employees, including management personnel, subjected Doty to agist comments. Defendant regularly mocked Doty about his age.

21. For example, Doty was told to "watch out for the fourth quarter" and was mocked as being on the "grey team." One manager mocked Doty about "running your old ass around."

22. On or about February 20, 2021, Doty told Diane Tosk, Defendant's human resources manager, that he needed medical leave to have knee surgery. He requested leave under the FMLA and applicable company policies.

23. Defendant approved Doty's request for leave, granting him 90 days for knee surgery and recovery.

24. During Doty's absence, Defendant assigned his key client accounts to John Kleimenhagen, who was under 40 years of age.

25. Defendant's agents warned Doty that he would be fired if he did not return at the expiration of his FMLA leave.

26. Defendant did not engage in the interactive process with Doty to ascertain whether additional accommodation was appropriate based upon his knee condition under either the ADA or FCRA.

27. While Doty needed additional time to recover, given Defendant's warnings, he returned to full time work in June 2021. Doty experienced significant pain upon his return to full-time work but endured the pain to avoid being terminated.

28. Doty's supervisors continued mocking him, stating they "did not think he would come back at all."

29. Supervisors also informed Doty that his larger customer accounts were permanently reassigned to other sales agents, including Kleimenhagen.

30. Doty objected to having his accounts reassigned, telling his supervisor that he was entitled to return to his position as he had left it before taking leave. The reassignment of his larger accounts constituted a material and adverse change to his position.

31. Defendant ignored Doty's objections and refused to return his accounts.

32. After taking away Doty's larger accounts, Defendant began criticizing Doty's performance.

33. On or about September 30, 2021, supervisors Chuck Sauers and Karl Hahn called Doty to the office for a meeting.

34. During the meeting, Sauers told Doty he had "bad news" and "you need to retire." Sauers continued to tell Doty, "we need you to retire" and "we have given your accounts to John."

35. Doty objected. He refused to retire. In response, Defendant fired Doty.

36. After firing Doty, Defendant set out to prevent Doty from obtaining employment elsewhere.

37. For example, Defendant told at least one prospective employer that Doty "was not medically qualified to work." Doty has lost employment opportunities as a result.

38. As a result of Defendant's actions, Doty has been damaged.

39. Doty has been required to retain legal counsel to represent his interests.

### COUNT I—FMLA INTERFERENCE

40. Doty restates the allegations set forth in Paragraphs 1-15, 18-19, 22-25, and 28-39.

41. Doty was an eligible employee who worked for Defendant for at least 1 year and 1,250 hours before requesting leave under the FMLA.

42. During all relevant times, Defendant employed 50 or more employees within 75 miles of the worksites at which Doty worked.

43. Doty suffered from a serious health condition that required in patient care in a hospital and also continuing medical treatment.

44. Doty was entitled to leave under the FMLA to have knee surgery and time to recover.

45. Doty engaged in protected activity by requesting leave under the FMLA.

46. Doty was entitled to be restored to the same or equivalent position upon his return from FMLA leave.

47. During Doty's absence, Defendant transferred Doty's key customer accounts to other sales personnel.

48. When Doty returned from leave, Defendant refused to return the customer accounts to Doty, thus failing to restore Doty's employment as Doty had left it.

49. Doty objected to having his key accounts taken.

50. Defendant also began criticizing Doty's performance.

51. Defendant set Doty up to terminate his employment for requesting and taking FMLA leave for a serious health condition.

52. As a result of Defendant's actions, Doty was damaged.

53. Defendant's actions were malicious, willful, and taken in bad faith.

WHEREFORE, Doty seeks damages that include, without limitation, back pay, front pay, lost benefits, pre and post-judgment interest, liquidated damages, attorneys' fees, costs, and such other and further relief as the Court deems just and proper.

## COUNT II—FMLA RETALIATION

54. Doty restates the allegations set forth in Paragraphs 1-15, 18-19, 22-25, and 28-39.

55. Doty engaged in activity protected by the FMLA by requesting and taking FMLA leave.

56. Doty suffered an adverse employment action as a result of requesting and/or taking FMLA leave.

57. Defendant punished Doty for taking FMLA leave by taking away his best customer accounts and reassigning them to a substantially younger employee.

58. Defendant also began criticizing Doty's performance and ultimately terminating him.

59. Doty was qualified for his job.

60. A causal connection exists between Doty's request for FMLA leave and the adverse employment actions identified above.

61. Defendant's actions have caused Doty to suffer damages.

62. Defendant's actions were willful, intentional, and malicious.

WHEREFORE, Doty seeks damages that include, without limitation, back pay, front pay, lost benefits, pre and post-judgment interest, liquidated damages, attorneys' fees, costs, and such other and further relief as the Court deems just and proper.

## COUNT III—VIOLATION OF THE ADEA

63. Doty restates the allegations set forth in Paragraphs 1-16, 18-21, 24-25, and 28-39.

64. At all times relevant to the Complaint, Doty was an employee covered under the ADEA.

65. Defendant is an employer covered under the ADEA.

66. Doty is over the age of forty (40) and was qualified for his job.

67. During a protected leave of absence, Defendant reassigned Doty's accounts to an employee under 40 years of age.

68. Defendant planned to take away Doty's accounts to sabotage his performance and ultimately terminate him.

69. When Doty returned to work, Defendant refused to return his accounts. Several months later, Defendant ordered Doty to "retire."

70. Defendant's actions were motivated by discriminatory animus.

71. For example, Defendant's employees repeatedly mocked Doty for his age. And Defendant illegally demanded that Doty retire.

72. As a result of Defendant's actions, Doty suffered damages.

73. Defendant's actions were willful, intentional, and malicious.

WHEREFORE, Doty seeks recovery of back pay, front pay, lost benefits, liquidated damages, attorneys' fees, costs, pre and post-judgment interest, and such other and further relief as the Court deems appropriate.

## COUNT IV—ADEA RETALIATION

74. Doty restates the allegations set forth in Paragraphs 1-16, 18-21, 24-25, and 28-39.

75. Doty engaged in activity protected by the ADEA. Among other things, Doty objected to having his sales accounts reassigned to a substantially younger employee.

76. Doty also objected to Defendant's demand that Doty retire.

77. Doty also objected to Defendant's repeated ageist comments that were offensive.

78. After Doty objected to the illegal acts identified above, Defendant fired Doty. In fact, the termination came immediately after Doty refused to voluntarily resign.

79. Defendant's actions caused Doty to suffer damages.

80. Defendant's actions were willful, intentional, and malicious.

WHEREFORE, Doty seeks recovery of back pay, front pay, lost benefits, liquidated damages, attorneys' fees, costs, pre and post-judgment interest, and such other and further relief as the Court deems appropriate.

## COUNT V—VIOLATION OF THE ADA

81. Doty restates the allegations set forth in Paragraphs 1-19 and 22-39.

82. Doty suffered from a degenerative knee condition that required knee replacement surgery.

83. Doty's knee condition substantially limits his ability to perform major life activities, including without limitation, walking, standing, lifting, and bending.

84. In addition to suffering from a disability, Defendant regarded Doty as disabled.

85. Doty was qualified to perform his job.

86. Defendant is an employer covered by the ADA.

87. At all times relevant to the Complaint, Doty was an employee covered by the ADA.

88. Through the actions described above, Defendant discriminated against Doty on the basis of his disability.

89. Specifically, Defendant threatened to fire Doty unless he returned from FMLA leave as scheduled.

90. Defendant failed to engage in the interactive process with Doty to evaluate whether he was ready to return to work after his medical leave expired.

91. By threatening to fire Doty, Defendant foreclosed any interactive dialogue about extending Doty's leave as an accommodation. Doty returned to work before he was physically ready and, as a result, suffered excess pain.

92. During Doty's leave, Defendant reassigned his customer accounts to a younger, non-disabled employee.

93. Defendant regarded Doty as too old and disabled to stay employed. Thus, Defendant set him up to fail by taking away his key accounts. Thereafter, Defendant began criticizing Doty's performance.

94. In September 2021, Defendant called a meeting with Doty and demanded that he retire. Doty objected and refused. Defendant fired him.

95. Defendant's agents told third parties that Doty was a health risk who was "not medically qualified to work." Defendant did this to block Doty from becoming employed post-termination.

96. Defendant subjected Doty to adverse employment actions, including the removal of his accounts and termination, on the basis of his disability.

97. Defendant also perceived Doty as disabled.

98. As a result of Defendant's actions, Doty has been damaged.

99. Defendant intentionally and recklessly violated Doty's legal rights.

WHEREFORE, Doty seeks recovery of back pay, front pay, compensatory damages, punitive damages, attorneys' fees, pre and post-judgment interest, costs, and such other and further relief as the Court deems appropriate.

## COUNT VI—ADA RETALIATION

100. Doty restates the allegations set forth in Paragraphs 1-19 and 22-39.

101. Doty engaged in protected activity by requesting medical leave for a disability.

102. Defendant also perceived Doty as disabled.

103. Rather than engage in the interactive process upon learning of Doty's disability, Defendant ordered Doty to return immediately after his 90-day medical leave expired or be subjected to termination.

104. Additionally, upon Doty's return from FMLA leave, Defendant took away Doty's key customer accounts, which adversely impacted Doty's earnings.

105. Defendant also began criticizing Doty's performance despite having failed to restore Doty's key customer accounts.

106. In September 2021, Defendant fired Doty.

107. Shortly after firing Doty, Defendant contacted prospective employers and told them Doty was not medically capable of working.

108. These actions were causally related to Doty requesting and taking medical leave for his disability.

109. Defendant also retaliated against Doty by forcing him to return to work without any regard for the pain he had to endure.

110. As evidenced by its threat to fire Doty if he did not return from medical leave after ninety (90) days, Defendant would not grant Doty any additional accommodations, and thus, forced him to incur more pain and damage to his knee.

111. Defendant's actions were willful, intentional, and malicious.

WHEREFORE, Doty seeks recovery of back pay, front pay, compensatory damages, punitive damages, attorneys' fees, pre and post-judgment interest, costs, and such other and further relief as the Court deems appropriate.

## COUNT VII—VIOLATION OF THE FCRA

112. Doty restates the allegations set forth in Paragraphs 1-39.

113. Defendant is an employer as defined by the FCRA.

114. At all relevant times, Doty was an employee covered by the FCRA.

115. Doty is over forty (40) years of age.

116. Doty is also disabled and/or regarded as disabled by Defendant.

117. At all relevant times, Doty was qualified for his job.

118. Through the actions described above, Defendant discriminated against Doty on the basis of his age and disability.

119. Doty suffered adverse employment actions as a result of Defendant's discriminatory acts. These adverse actions include, for example, loss of client accounts, employment termination, and discriminatory employment references through which Defendant referred to Doty as medically unqualified to work.

120. Defendant's discriminatory and retaliatory conduct was willful, intentional, and malicious.

121. As a result of Defendant's discriminatory and retaliatory acts, Doty was damaged.

WHEREFORE, Doty seeks back pay, front pay, compensatory damages, punitive damages, attorneys' fees, pre and post-judgment interest, costs, and such other and further relief as the Court deems appropriate.

## COUNT VIII—FCRA RETALIATION

122. Doty restates the allegations set forth in Paragraphs 1-39.

123. Doty is over the age of forty (40), disabled, and regarded as being disabled.

124. Doty engaged in activity protected by the FCRA, including for example, requesting medical leave, taking medical leave, objecting to discriminatory statements, and objecting to a demand by Defendant that he retire.

125. In response to these and other protected actions, Defendant took adverse actions against Doty that included, for example, taking away his key sales accounts, terminating his employment, harassing him in the workplace, firing him, and referring to him as medically unable to work to prospective employers.

126. A causal relationship exists between the protected activity and adverse employment actions.

127. Doty has suffered damages as a result of Defendant's retaliatory acts.

128. Defendant's conduct is willful, intentional, and malicious.

WHEREFORE, Doty seeks back pay, front pay, compensatory damages, punitive damages, attorneys' fees, pre and post-judgment interest, costs, and such other and further relief as the Court deems appropriate.

### COUNT IX—VIOLATION OF FWA

129. Doty incorporates the allegations set forth in Paragraphs 1-21, and 25-39.

130. Defendant is an employer covered under the FWA.

131. At all times relevant to the Complaint, Doty was an employee covered by the FWA.

132. Doty objected to practices of the employer that violated the anti-discrimination laws referenced in this Complaint.

133. Specifically, Doty objected to Defendant removing his key customer accounts in response to Doty taking protected medical leave under the FMLA, ADA, and FCRA.

134. Additionally, Doty objected to Defendant's demand that he retire in violation of the ADEA and FCRA.

135. In response to Doty's objections, Defendant continued to assign his key customers to a younger, non-disabled employee and ultimately fired Doty.

136. Defendant's retaliatory conduct was in direct response to Doty's protected conduct.

137. Defendant's retaliatory conduct caused Doty to suffer damages.

WHEREFORE, Doty seeks back pay, front pay, compensatory damages, attorneys' fees, pre and post-judgment interest, costs, and such other and further relief as the Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiff, Wayne Doty, demands a trial by jury on all issues so triable.

Respectfully submitted this 27th day of February, 2023.

**ORR | COOK**

*s/René M. Fix*
**René M. Fix**
Florida Bar No.: 189545
**David N. Miller, Jr.**
Florida Bar No.: 1011389
818 A1A North, Suite 302
Ponte Vedra Beach, Florida 32082
(904) 358-8300 (telephone)
(904) 358-8303 (facsimile)
**Primary and Secondary Email Addresses:**
rfix@orrcook.com
dmiller@orrcook.com
mweaver@orrcook.com